IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CODY DECKER and UNITEDHEALTHCARE
INSURANCE COMPANY,

                               Plaintiffs,                          OPINION AND ORDER

    v.

                                                    25-cv-277-wmc

JIMMY TOMAINO and PLYMOUTH ROCK
ASSURANCE PREFERRED CORPORATION,

                               Defendants.

This negligence case was removed to federal court based on diversity jurisdiction,[1] with plaintiffs Cody Decker and his insurer, UnitedHealthcare Insurance Company, seeking compensation from defendants Jimmy Tomaino and his insurer, Plymouth Rock Assurance Preferred Corporation, for injuries allegedly suffered by Decker after being bitten by Tomaino's dog at a campground in Portage, Wisconsin. While the parties agree that Wisconsin's strict liability dog bite statute, Wis. Stat. § 174.02(1)(a), applies in this case, defendants have moved for summary judgment, arguing that plaintiffs' negligence claim is precluded on public policy grounds. (Dkt. #10.) For the reasons explained below, the court will deny defendants' motion, and this case will proceed to trial on June 15, 2026.

---

[1] Plaintiffs originally filed this lawsuit in the Circuit Court for Columbia County, Wisconsin, which defendants timely removed on April 10, 2025, with no objection from plaintiffs. (Dkt. #1.) The complaint and notice of removal both represent, and the court has no basis to question, that the four parties are citizens of different states and that Decker has incurred damages totaling well in excess of $75,000. (Dkt. ##1 and 1-1.) Accordingly, the court is satisfied that the jurisdictional requirements are met under 28 U.S.C. § 1332.

UNDISPUTED FACTS[2]

**A. Background**

On July 15, 2022, defendant Jimmy Tomaino and his friend, Bill Bachman, were travelling from Pennsylvania through Wisconsin on their way to Montana with Tomaino's dog, Koda. After several tires on their truck blew, however, Tomaino and Bachman spent the night at the Sky High Camping Resort in Portage, Wisconsin, with the intention of leaving the next morning to get the tires repaired. Plaintiff Cody Decker was also camping at Sky High that night in the campsite immediately adjacent to Tomaino, Bachman, and Koda. As depicted in the hand-drawn sketch below, Decker was staying in campsite no. 141; Tomaino and Bachman were in campsite no. 140; and campsite no. 139 was vacant.



---

[2] Unless otherwise indicated, the following facts are material and undisputed for purposes of summary judgment. The court has drawn these facts from the defendants' proposed findings of fact (dkt. #13) and plaintiffs' responses (dkt. #17), as well as plaintiffs' proposed findings of fact (dkt. #18), to which defendants did not respond, viewing them and all reasonable inferences in a light most favorable to plaintiffs. *See Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014) (At summary judgment, the court must "construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

(Dkt. #12-3.)  Campsite nos. 140 and 141 measured approximately 20-25 feet wide and 45-50 feet long.

When Tomaino and Bachman arrived at the campground on July 15, Decker helped to guide the truck and camper into their campsite.  During that first encounter, Decker spoke with the men about their travels and mechanical problems.  In particular, Tomaino pointed out the damage from his blown tires, which Decker saw from both sides of the camper.  In that encounter, Tomaino never gave Decker any indication that he was unwelcome at their campsite.[3]  Decker and his wife also spoke with Bachman on July 15.

Decker observed that Tomaino and Bachman had a dog named Koda, which appeared to be a boxer-type breed, in their truck on July 15.  While Decker admits he knew some boxers can be aggressive, he did not see behavior that would lead him to conclude that Koda was aggressive; neither did Tomaino nor Bachman warn Decker that Koda was aggressive, caution him to stay away, or post a "no trespassing" or "beware of dog" sign visible to Decker at their campsite.

According to Decker, who has camped at public campgrounds for many years, it is common for campers to enter one another's campsites for social interactions and to give or solicit information.  While Decker testified that each person rents a specific area within a campground for their own use and his expectation of privacy on a campsite is similar to the front yard of a residence, entering the boundary lines of another's campsite is "not categorically impermissible."  More specifically, Decker acknowledged that he would not have the privilege

---

[3] While defendants state that Tomaino "disputes this conversation," and maintain that Decker's help in parking the camper "never happened," they fail to support this contention with any evidence.  (Dkt. #13, at 3 n.1.)  Regardless, the court must resolve disputed issues of fact in plaintiff's favor as the nonmovant.  *Miller*, 761 F.3d at 877.

and ability to walk as far into a campsite as he wanted; rather, his custom and practice is to wait for recognition from an occupant to acknowledge him and give him permission to enter.

In addition, Tomaino, also a frequent camper, agrees that it is not unusual for a camper to speak with another camper, sometimes by walking over to another campsite, as the boundary lines of campsites are not so strict that it would be unusual for a person to set foot into another's campsite. Indeed, there are often public walkways and roadways around the campsites.

### B. Decker's Injury

On the morning of July 16, 2022, Decker entered campsite no. 140 uninvited to tell Tomaino about a nearby repair shop. Tomaino's truck, which measured approximately 15 to 20 feet in length, was parked about 10 feet into the campsite. Decker walked half-way into Tomaino's campsite (about 25 to 30 feet) to the back of Tomaino's truck before announcing himself. When he did so, Koda ran out from under the camper and bit Decker. At the time, Koda was on a 15-foot leash attached to the camper. Although Decker agrees that it is not generally surprising that a dog would be outside at a campsite, he was surprised because he did not know that Koda was outside and under the camper.

Tomaino claims that Koda never bit a person before Decker. Nonetheless, Koda's veterinary records contain multiple references to him being aggressive, including growling and snapping at veterinary staff, notes that Koda was muzzled on multiple occasions for aggressive behavior, and a reference to a past "claim" involving the dog.

4

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In deciding whether to grant summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

As mentioned, the parties agree that the liability standard in this case is governed by Wis. Stat. § 174.02(1)(a), which creates strict liability for dog owners as follows: "the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property." The purpose of the statute is "to protect those people who are not in a position to control the dog." *Pawlowski v. American Fam. Mut. Ins. Co.*, 2009 WI 105, ¶ 76, 322 Wis. 2d 21, 777 N.W.2d 67; *see also Molitor v. Voutiristas*, No. 23-cv-1113, 2024 WL 4851047, at *2 (E.D. Wis. Nov. 20, 2024) (explaining same).

While the doctrine of strict liability "relieves a plaintiff from proving specific acts of negligence and protects [them] from certain defenses," § 174.02 "still requires a plaintiff to establish the other elements common to all negligence claims, causation and damage" and allows a defendant to argue comparative negligence. *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*, 2004 WI 62, ¶ 9, 272 Wis. 2d 46, 680 N.W.2d 345 (internal citation omitted); *see also Polfuss v. Wisconsin Mut. Ins. Co.*, No. 2025AP1186, 2026 WL 60713, at *5 (Wis. Ct. App. Jan. 8, 2026) (explaining that strict liability is not the same as absolute liability, meaning

principles of comparative and contributory negligence still apply under § 174.02).  Thus, to prevail on their negligence claim, plaintiffs must show that Tomaino's dog caused Decker's injuries and Decker suffered damages.  *Id*.  Here, defendants purport to challenge plaintiffs' claim on causation public policy grounds.

## I.  Causation

The Wisconsin Supreme Court has held that causation under Wis. Stat. § 174.02 has two components -- "cause-in-fact" and "legal cause."  *Cole v. Hubanks*, 2004 WI 74, ¶ 22, 272 Wis. 2d 539, 681 N.W.2d 147 ("[I]n order for a dog owner to be liable, a sufficient legal cause, as well as a cause-in-fact, must be shown."); *Fandrey*, 2004 WI 62, ¶ 21; *Molitor*, 2024 WL 4851047, at *3.  Here, defendants do not dispute that Tomaino's dog *was* the cause-in-fact of Decker's injuries.  *See Fandrey*, 2004 WI 62, ¶¶ 12-14 (cause-in-fact exists where dog bite was a "substantial factor" in producing the plaintiff's injury).  Indeed, the undisputed facts establish that when Decker entered Tomaino's campsite, Koda ran out from under the camper and bit Decker, causing him injury.

On the other hand, legal cause is akin to proximate cause and requires a judicial determination of whether recovery should be limited or precluded based on the court's analysis of six public policy factors:  "(1) the injury is too remote from the negligence or (2) too wholly out of proportion to the culpability of the negligent tort-feasor, or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or (4) because allowance of recovery would place too unreasonable a burden upon [a class of tortfeasors], or (5) be too likely to open the way to fraudulent claims, or (6) would enter a field that has no sensible or just stopping point."  *Pawlowski*,

2009 WI 105, ¶¶ 59-60; *see also Fandrey*, 2004 WI 62, ¶¶ 12-14 and 22 (explaining applicability of public policy factors to § 174.02). "Although any one of these public policy factors might be dispositive, dismissing a claim [as a matter of law] based on the public policy factors is reserved for cases where the facts are 'extreme' and it would 'shock the conscience of society to impose liability.'" *Polfuss*, 2026 WL 60713, at *5 (quoting *Fandrey*, 272 Wis. 2d 46, ¶¶ 15 and 29). In addition, Wisconsin courts have cautioned that "the application of public policy in dog bite cases must be done on a case-by-case basis because small changes in the facts often lead to differing results." *Kelly v. Berg*, 2019 WI App 5, ¶ 15, 385 Wis. 2d 513, 925 N.W.2d 780 (citing *Erdmann ex rel. Laughlin v. Progressive N. Ins. Co.*, 2011 WI App 33, ¶ 9, 332 Wis. 2d 147, 796 N.W.2d 846).

Unsurprisingly, the parties discuss two Wisconsin cases applying these public policy factors in dog bite cases brought under § 174.02. In the seminal case of *Fandrey*, 2004 WI 62, ¶ 3, the Wisconsin Supreme Court refused to impose strict liability where a three-year-old girl and her mother entered a friend's unlocked home without an invitation or notice, and a dog within bit the child. The court based its decision on three public policy grounds: (1) the child's injuries were too out of proportion to the culpability of the homeowners, who merely failed to lock their doors, *id.*, ¶ 34; (2) allowing recovery would place too unreasonable a burden on the homeowners, who should not have to keep their dog locked away when they expect their house to be empty, *id.*, ¶ 35; and (3) extending liability to uninvited guests in a dog owner's home would enter a field with no sensible or just stopping point, *id.*, ¶ 39. *See also Kelly,* 2019 WI App 5, ¶ 20 ("Like the homeowner in *Fandrey*, [the dog owner] merely failed to anticipate *extraordinary* circumstances, which in this case resulted in [the dog] escaping by tunneling under a fence to [plaintiff's] yard and committing an unprovoked attack.") (emphasis added).

On the other hand, in *Erdman*, the Wisconsin Court of Appeals found the public factors inapplicable where a four-year old girl was bit by a dog lying in a hallway while she was in a "mad rush" to get out of a friend's house to the swimming pool and ran into the dog. *Erdmann*, 2011 WI App 33, ¶¶ 4 and 13 ("[T]his case appears to be nothing more than a run-of-the-mill dog bite case, rendering the public policy factors inapplicable."). Indeed, the court of appeals found that "[u]nlike the owners in *Fandrey*, whom the supreme court concluded could have done nothing further to prevent the injury, [defendants] could have taken any number of steps to prevent Erdmann from being bitten." *Id.*, ¶ 15; *compare Polfuss*, 2026 WL 60713, at *9 ("[W]e are not persuaded that [a dog bite that occurred when plaintiff opened a neighbor's storm door while attempting to return item] is an 'extreme' case that would warrant application of the public policy factors to bar liability.").

While defendants argue that the public policy factors weigh in their favor because the circumstances in this case are more like those in *Fandrey* than in *Erdman*, the court concludes for the reasons below that defendants have failed to show that liability should be precluded as a matter of law, especially at this stage of the litigation. *See Padilla v. Bydalek*, 56 Wis. 2d 772, 779-80, 203 N.W.2d 15 (1973) ("[I]t is usually better practice to submit [] to the jury [] the issues of negligence and causation in the same manner as in the ordinary case," before the court "decide[s] as a matter of law whether or not considerations of public policy require that there be no liability.") (internal quotation omitted); *Erdmann*, 2011 WI App 33, ¶ 13 (citing *Fandrey*, 2004 WI 62, ¶ 15) ("Using public policy to preclude liability is an extraordinary matter, [and] doing so before trial is particularly disfavored."); *Polfuss*, 2026 WL 60713, at *9 (declining to impose strict liability as matter of law given genuine issues of disputed fact about dog owner's knowledge and consent).

## II.    Public Policy

Nevertheless, defendants argue that four of the six public policy factors dictate a grant of summary judgment against plaintiffs, grouping them in two categories:  (1) Decker's injury is too remote from the negligence and out of proportion to the culpability of the negligent tortfeasor; and (2) allowing a recovery would place an unreasonable burden on Tomaino and lacks a sensible stopping point.  Specifically, they argue that Decker was an uninvited guest, who proceeded halfway (20-25 feet) into the campsite of virtual strangers before announcing his presence, all while knowing Tomaino had his boxer-type dog, Koda, with him.  Defendants also argue that Tomaino had sensibly placed Koda on a 15-foot chain to ensure that she could not reach the road and was separated from anyone passing by the campsite.  Finally, defendants claim that imposing liability for Decker's injuries on Tomaino would, like *Fandrey*, create the unreasonable result of holding dog owners liable for injuries to trespassers and forcing dogs to be kept inside a vehicle or camper, as opposed to leashed within the vicinity of its owner.

For their part, plaintiffs contend that entering a campsite is not equivalent to entering another person's home, as in *Fandrey*; moreover, unlike leaseholders, Wisconsin in particular affords fewer privacy protections to temporary occupants of overnight campsites.  *Compare* Wis. Stat. § 943.13(1m)(g) (Trespass includes entering or remaining "on the premises of a campground after having been *notified* not to enter or remain on the premises or after having been *notified* that the owner or operator has withdrawn consent for the person to enter or remain on the premises.") (emphasis added) *with* § 943.13(1e)(az) (defining implied consent as "conduct or words or both that imply that an owner or occupant of land has given consent to another person to enter [a leaseholder's] land").  Plaintiffs similarly point out that regardless of any privacy right, there is a generally-recognized, implicit license to approach a home, knock

9

on the door, wait to be received, and then leave absent an invitation. *See State v. Wilson*, 2022 WI 77, ¶ 25, 404 Wis. 2d 623, 982 N.W.2d 67 (discussing ordinary citizen's right to approach curtilage of another's home to knock on door in context of warrantless "knock and talk" investigation by police) (citing *Florida v. Jardines*, 569 U.S. 1, 8 (2013)).

Even as defendants concede (dkt. #20, at 6), Wisconsin has recognized that the implied consent to enter a neighbor's property is one of several considerations within the broader public policy analysis in dog-bite cases. *See Fandrey*, 2004 WI 62, ¶ 30 ("Consent may be implied from the conduct of the owner, from the relationship of the parties, or by custom."). Thus, as plaintiffs argue, a reasonable person in Decker's position could conclude that he had implied consent to approach Tomaino's camper to provide him with information on obtaining new tires, especially after prior interactions with Tomaino and his friend as customary in public campgrounds.

Although defendants argue that Decker should have taken greater care in entering Tomaino's campsite because he knew that Tomaino had with him a boxer-type dog, which are generally known for aggressiveness, Decker had not observed Koda exhibiting aggressive behavior *and* Tomaino had not warned Decker to stay away from her. Moreover, while Tomaino avers that Koda had never bitten anyone before biting Decker, plaintiffs have submitted evidence from which a jury could conclude that Tomaino knew Koda could be aggressive, making it foreseeable that bringing Koda to a public campground and tethering her to a 15-foot leash might lead to a bite of a neighboring camper. *See* Wis. Admin. Code NR § 45.06 (requiring pets in *state-owned* or *state-operated* campgrounds to be kept on a physical leash not more than 8 feet long and under control at all times). Therefore, it is possible to conclude from the circumstances present in this case that Tomaino could have taken additional measures

10

to protect visitors who may wander into his campsite, whether restraining the dog on a shorter leash, employing a muzzle, or warning unwary neighboring campers of the risk.

Regardless, the question of proximate cause is far too entangled with disputed material facts and facts not yet fully developed as to liability on plaintiffs' negligence claim in this case to be resolved before a full trial, particularly as to whether: (1) Tomaino could reasonably foresee that visitors could enter his campsite and approach within the reach of Koda's 15-foot chain; (2) Tomaino could have properly secured his dog with a 15-foot chain attached to his camper, which was parked behind his truck, about 30 feet inside his campsite;[4] (3) Tomaino had reason to know that his dog may act aggressively toward visitors; (4) Decker had, or reasonably concluded that he had, implied consent to enter Tomaino's campsite; and (5) Decker's actual injuries were foreseeable and extensive.  Accordingly, the court must deny defendants' motion for summary judgment, at least until the factual record is fully resolved at trial.[5]

---

[4] In calculating this number, the court assumes that the camper was parked behind Tomaino's truck, which is up to 20-feet long and was parked 10 feet inside the campsite, but these are among facts that will be more fully explored at trial.

[5] Of course, the jury will still need to decide whether the dog caused Decker's injuries and Decker suffered any damages.  Subsumed within those main questions are whether there was comparative negligence on Decker's part. *See Fandrey*, 2004 WI 62, ¶ 9 (internal citation omitted) (Wis. Stat. § 174.02 "still requires a plaintiff to establish the other elements common to all negligence claims, causation and damage" and allows a defendant to argue comparative negligence.); *see also Polfuss*, 2026 WL 60713, at *5 (comparative and contributory negligence still apply under § 174.02). Further, as for proximate cause specifically and the public policy factors generally, the court has found at least preliminarily that neither preclude liability as a matter of law as defendants argue at summary judgment. Given genuine issues of disputed fact about Tomaino's knowledge and consent and Decker's actions, this means that after hearing the evidence at the jury trial and any additional evidence that either side may wish to offer to the court alone, the court (not the jury) will reach a final conclusion as to whether public policy factors preclude liability here.

11

ORDER

IT IS ORDERED that the motion for judgment filed by defendants Jimmy Tomaino

and Plymouth Rock Assurance Preferred Corporation (dkt. #10) is DENIED.

Entered this 18th day of March, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

12