IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CODY DECKER, *et al.*,

Plaintiffs,

v.

JIMMY TOMAINO, *et al.*,

Defendants.

OPINION and ORDER

25-cv-277-wmc

---

Plaintiffs Cody Decker and UnitedHealthcare Insurance Company are suing defendants Jimmy Tomaino and Plymouth Rock Assurance Preferred Corporation after Tomaino's dog allegedly bit and injured Decker at a public campground in July 2022. Following the incident, Tomaino made handwritten notes about the event and later sent a letter to his insurer. After filing suit, plaintiffs sent discovery requests seeking, among other things, Tomaino's recorded or written statements about the incident and materials defendants' insurance investigator created after interviewing a witness. Defendants withheld certain responsive documents as attorney work product. After meet-and-confer efforts failed, plaintiffs filed a motion to compel the withheld materials and for leave to take a second deposition of Tomaino should any materials be compelled. Dkt. 21.

For the reasons below, the motion is GRANTED in part and DENIED in part.

BACKGROUND

Plaintiffs allege that Tomaino's dog, Koda, bit Decker on his chest and forearm at a public campground in Portage, Wisconsin on July 16, 2022. Dkt. 1-1 at 4. "Immediately following [the dog bite]," Tomaino made some handwritten notes describing the incident. Dkt.

27. Defendants report that these notes have since been lost. *Id.* In the months following the incident, Tomaino received letters from Decker's counsel, the first in August 2022 and another October 2022. Dkts. 24-1 & 24-2.

On September 27, 2022, after Tomaino received the first letter, Tomaino wrote and sent a letter to his insurance company. Dkt. 24-11. Defendants produced a version of this letter in discovery that was largely redacted on work product grounds. The unredacted potions state that Tomaino wrote the letter after he "talk[ed] to [his] attorneys," who recommended that he notify and provide a statement to his insurance company. *Id.* Tomaino also makes reference to possibly being sued by Decker. Tomaino testified that this letter "fully reflected" the contents of his near-contemporaneous handwritten notes that are now lost. Dkt. 27.

The lead-up to this case unfolded over the next two years. The defendant insurance company conducted an investigation, during which its investigator interviewed Bill Bachman, a witness of the incident, in April 2023. *See* Dkt. 24-4 at 3. At the end of that year, Decker's counsel sent a formal demand letter seeking monetary reimbursement for damages sustained from the alleged bite. Dkt. 24-3. Ultimately, plaintiffs filed suit against defendants in Wisconsin state court in March 2025, Dkt. 1-1, which was removed here in April. Dkt. 1.

Plaintiffs served several requests for production seeking, among other things, copies of statements made by plaintiffs and witnesses and Koda's veterinarian records. Dkt. 24-4. Defendants withheld several responsive documents on the basis that they were protected attorney work product. *See id.* In October 2025, plaintiffs deposed Tomaino who confirmed the existence of certain statements. *See* Dkt. 24-7. In December 2025, plaintiffs' counsel sent defense counsel a letter insisting that the statements be produced. *Id.* After meet-and-confer correspondence failed to resolve the issues, plaintiffs filed this motion to compel seeking an

order denying defendants' objection to the documents as protected work product, compelling the production of the documents, and permitting a second deposition of Tomaino.  Dkt. 21.

The motion has been fully briefed and is ripe for a decision.

LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(3), commonly known as the "work product rule," prohibits discovery of otherwise-discoverable "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  The burden of establishing a privilege or protection rests on the party invoking it.  *United States v. Nobles*, 422 U.S. 225, 237–38 (1975).

The work product rule is intended to protect attorney thought processes and mental impressions and extends only to documents that were created in anticipation of litigation.  *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118–19 (7th Cir. 1983).  The test is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (citation omitted).  "[A] remote prospect of future litigation is not sufficient to

3

invoke the work product doctrine." *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 65 (7th Cir. 1980). Of the two categories of work product, opinion work product that reflects the attorney's mental processes is more "scrupulously protected" than fact work product. *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000).

The Seventh Circuit has further elaborated that the standard requires distinguishing between materials prepared in the ordinary course of business "as a precaution for the remote aspect of litigation" and those prepared "because some articulable claim, *likely* to lead to litigation ... ha[s] arisen." *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 977 (7th Cir. 1996) (emphasis in original). For example, if a company investigates an accident or event as an ordinary business procedure, any investigative documents born out of that investigation are generally not privileged work product. *Nat'l Presto Indus.*, 709 F.2d at 1118–19. Whether a document is protected work product "depends on the motivation behind its preparation, rather than on the person who prepares it." *Caremark, Inc.*, 195 F.R.D. at 614.

Finally, unlike other evidentiary privileges, a party may discover certain documents protected by the work product doctrine by showing "substantial need" and an inability to obtain equivalent information "without undue hardship." Fed. R. Civ. P. 26(b)(3)(A)(ii). However, "opinion" work product, like mental impressions, conclusions, opinions, or legal theories, is never discoverable. Fed. R. Civ. P. 26(b)(3)(B).

## ANALYSIS

Plaintiffs' motion seeks four distinct items or categories of information and leave to depose defendant Tomaino again. The court addresses each in turn.

## A. Handwritten notes

Plaintiffs seek Tomaino's handwritten notes that he reportedly made "immediately after" the incident. Dkt. 22 at 7. Based on the record, the court finds that these notes are not protected work product. The notes were made far too close in time to the incident for Tomaino to have reasonably anticipated litigation. In the immediate aftermath, litigation was a mere remote possibility. *Grand Jury (II)*, 640 F.2d at 65. Moreover, the notes were apparently Tomaino's factual recounting of what happened. There is no suggestion that he consulted with an attorney prior to writing the notes, so there is no possibility that they would contain legal opinions or theories. On these points alone, the court finds the notes are not protected and must be produced. But even if there is some light work product protection, these notes represent Tomaino's contemporaneous factual recounting of the incident, which is relevant information that has no substantial equivalent. Plaintiffs have a substantial need for this information to prosecute their case, so the notes must be produced under the substantial need exception as well. Fed. R. Civ. P. 26(b)(3)(A)(ii). Defendants represent that these notes were lost and are not currently in their possession. *Id.* The court cannot order the production of something that does not exist, but to the extent the notes are located after a reasonable search, they must be produced.

## B. The September 27, 2022, letter to insurer

Plaintiffs seek the September 27, 2022, written statement Tomaino authored and sent to his insurance company. Dkt. 22 at 5. Defendants continue to withhold this letter on the grounds that it is protected attorney work product. Dkt. 26 at 5.

Tomaino sent the letter to his insurance company after he received the first correspondence from Decker's attorney and after Tomaino purportedly spoke to an attorney.

Although these events may cause some suspicion of eventual legal action, that suspicion does not rise to the level of anticipation required for work product protection. *Grand Jury (II)*, 640 F.2d at 65. This letter was written just a couple of months after the incident, when the parties were still assessing their positions and next steps. This is borne out by the letter from Decker's attorney, which did not threaten legal action or make any demands, but rather asked to be forwarded to Tomaino's insurer. Dkt. 24-1 at 2. And while the unredacted portion of Tomaino's letter contemplates being sued, this does not appear to be a well-developed thought that demonstrates serious litigation preparation and strategy. *See* Dkt. 24-11 at 3 ("So much for this guy taking responsibility and not suing me.").

But these points are overshadowed by the larger concern regarding the loss of the contemporaneous, handwritten notes Tomaino wrote immediately after the incident. Tomaino testified that their contents were "fully reflected in the [September 27] statement [he] provided to [his] insurer." Dkt. 27. Accordingly, even if the September 27 letter was work product, plaintiffs have a stronger case that they have a substantial need for the information contained in the letter that, as long as the handwritten notes remain lost, they have no other way of accessing. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Moreover, by Tomaino's account, the information contained in the letter is factual and does not reflect the kind of sensitive mental impressions that are protected from disclosure. *See* Fed. R. Civ. P. 26(b)(3)(B).

Because the September 27, 2022, letter contains factual information to which plaintiffs are entitled but that is otherwise unavailable, it is discoverable regardless of whether it is work product and must be produced.

6

### C.  Statements from the Bachman interview

Plaintiffs seek the statement that witness Bachman made to the insurance investigator in April 2023.  Dkt. 21 at 7.  Defendants continue to withhold the information as protected work product, arguing that the insurance company was aware of Decker's retention of counsel and Tomaino's consultation with his attorneys before the interview, which indicate it was done in anticipation of plaintiffs' imminent suit.  Dkt. 26 at 10.

The problem is that the information defendants cite does not, on its face, make a strong case that the interview was conducted "because of the prospect of litigation," *Binks Mfg. Co.*, 709 F.2d at 1118–19, as opposed to some other routine business practice of an insurance company.  Defendants contend that other "evidence suggest[s]" that, at the time of the interview, the insurance company had "already completed its initial investigation into the matter," so the interview could not have been conducted in the ordinary course of business. Dkt. 26 at 10–11.  But the evidence to which defendants refer is an email sent by the insurance file handler assigned to the case, in which they explain that they have "completed [their] initial review of the file"—decidedly not, as defendants' brief implies, that they have completed some kind of initial investigation.  Dkt. 28-9.  In fact, the opposite is true.  The handler goes on to explain that they have "significant questions about how [Decker's] injuries were sustained," suggesting the investigation was only beginning.  *Id.*  In short, defendants' argument is unconvincing.  Because it is defendants' burden to prove the statement is protected work product, *Nobles*, 422 U.S. at 237–38, the court must resolve this issue in plaintiffs' favor.

Defendants must produce the written records of the Bachman interview.

## D. Photos of Koda and Tomaino's camper

Plaintiffs seek photographs of Koda and Tomaino's camper, in which he was staying at the campground. Dkt. 22 at 8. In plaintiffs' first set of requests for production, they asked for "any videos or motion pictures of the scene, the dog, or the plaintiffs, or any recreations or simulations of the incident that have been made." Dkt. 28-4 at 6. Defendants argue the request seeks only pictures of Koda or the camper "from the time of the incident," claim no such photos exist, and that they are under no obligation to create new photos of the dog or camper in response to the request. Dkt. 26 at 12.

The court does not agree with defendants' interpretation of the request. To the extent any exist, defendants must produce some photos sufficient to show Koda and the camper as close to the time of the incident as possible. If defendants legitimately have no pictures of Koda or the camper at all, there is nothing to produce, and there is no legal basis to compel defendants to create such materials.

## E. Re-deposing Tomaino

Plaintiffs argue the court should permit them to re-depose Tomaino now that the court has ordered the production of the disputed materials. Dkt. 22 at 8–9. But plaintiffs were aware that defendants were withholding certain documents, including a statement related to the incident, before taking his deposition in October 2025. *See* Dkts. 32-1 & 32-3. Plaintiffs were steadfast in proceeding with the deposition as scheduled despite lacking the requested materials. *See id.* If the materials were indispensable to a thorough and satisfactory deposition, plaintiffs should have moved to compel their production ahead of time and delayed the deposition until after they were obtained. The court warned the parties at the outset of the litigation that it "expects the parties to file discovery motions promptly if self-help fails."

Dkt. 9 at 4. Plaintiffs did not move to compel the production of the materials until months after the October 2025 deposition. Although plaintiffs ultimately prevailed in obtaining the materials, the later timing of their production is due to plaintiffs' litigation strategy choices and does not provide good cause to re-depose Tomaino at this juncture.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to compel, Dkt. 21, is GRANTED in part and DENIED in part consistent with this order.

2. Defendants must produce responsive materials within one week of this order.

3. The parties bear their own costs in this matter.

Entered 27th day of March, 2026.

BY THE COURT:

/s/

_____

ANITA MARIE BOOR
Magistrate Judge