IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CODY DECKER and UNITEDHEALTHCARE
INSURANCE COMPANY,

|                                              |                        |
| -------------------------------------------- | ---------------------- |
| Plaintiffs,                                  | OPINION AND ORDER      |
| v.                                           |                        |
|                                              | 25-cv-277-wmc          |
| JIMMY TOMAINO and PLYMOUTH ROCK PREFERRED CORPORATION, |          |
| Defendants.                                  |                        |

In this case now scheduled for a jury trial on Augst 17, 2026, in Madison, Wisconsin, plaintiff Cody Decker claims that he was injured when defendant Jimmy Tomaino's dog, Koda, bit him on July 16, 2022, at a public campground in Portage, Wisconsin. The following order addresses the parties' motions in limine ("MIL") in advance of the final pretrial conference ("FPTC") to be held via Zoom on Wednesday, June 3, 2026, at 1:00 p.m.[1]

## OPINION

### A. Plaintiffs' omnibus motion in limine (dkt. #37)

#### 1. Spoliation jury instruction regarding Tomaino's handwritten notes.

Plaintiffs ask that the court instruct the jury as to the spoliation or destruction of evidence (Seventh Circuit Civil Pattern Instruction 1.20) based on defendant Tomaino's admission that he is "unable to locate" his handwritten statement prepared immediately

---

[1] Because this trial is still 2½ months away, the court is inclined to hold an abbreviated FPTC on Wednesday to address the MIL rulings at the parties' request, but hold a more complete, robust FPTC closer to trial. Accordingly, the FPTC scheduled for June 9, 2026, will be cancelled and rescheduled for the week before trial.

after the incident on July 16, 2022, which concerned his interactions with plaintiff Decker at the campground.[2]  (Tomaino depo. (dkt. #15 at 70); Tomaino Aff. (dkt. #27 at ¶ 3).) Plaintiffs now contend that Tomaino intentionally destroyed his notes on September 27, 2022, after providing a statement to his insurer *and* after Decker's former attorney sent Tomaino a letter in August 2022, advising that a claim was being made.  (Dkt. #24-1.)

Although required to obtain an adverse inference instruction, plaintiffs do not present any evidence from which the court can infer that Tomaino intentionally destroyed the notes, hid adverse information, or otherwise acted in bad faith.  *Lewis v. McLean*, 941 F.3d 886, 892 (7th Cir. 2019) (adverse-inference instruction requires both a duty to preserve and destruction in bad faith); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) ("A document is destroyed in bad faith if it is destroyed for the purpose of hiding adverse information.") (internal citations omitted); *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002) ("[D]estruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained [adverse] information.").  At most, Tomaino's affidavit shows that he failed to keep track of his notes, the contents of which "are fully reflected in the statement [he] provided to [his] insurer" on September 27, 2022.  (Dkt. #27, at ¶ 3.)

Moreover, in granting plaintiff's motion to compel both his handwritten notes (if located) *and* Tomaino's statement to his insurer on September 27, 2022, Magistrate Boor found that while the August 2022 letter from Decker's attorney may have caused the

---

[2] On March 27, 2026, Magistrate Judge Anita Boor granted plaintiff's motion to compel defendant to produce these notes to the extent that they were located after a reasonable search.  (Dkt. #34 at 5.)

parties to suspect *eventual* legal action, that suspicion did not rise to the level of anticipation required for work product protection.  (Dkt. #34, at 6.)  Indeed, "Instruction 1.20 . . . is intended to provide the jury with a framework for drawing an adverse inference from *missing* evidence." *Garcia v. Alka*, No. 19 CV 5831, 2022 WL 180750, at \*1 (N.D. Ill. Jan. 20, 2022) (emphasis added).  Regardless, in this instance, plaintiffs have received the factual information to which they are entitled because the court ordered defendants to produce the September 27, 2022 statement, regardless of whether it is work product.  (*Id*.) For all of these reasons, the court finds that a spoilation instruction is not appropriate here. While this motion is DENIED, the court will RESERVE as to whether or not the possible destruction of defendant's fairly contemporaneous, hand-written notes is an appropriate subject of cross-examination or argument by plaintiffs' counsel.

2. **Preclude defendants from introducing expert testimony at trial.**

   This motion is GRANTED as unopposed.

3. **Preclude evidence or argument of plaintiff's prior conviction and civil lawsuits.**

   Under Federal Rules of Evidence 402, 403, and 404(b), plaintiffs move to preclude all questions and references to Decker's prior criminal history and civil lawsuits, including a 12-year-old criminal "lawsuit" for disorderly conduct in a tavern,[3] a civil lawsuit related to that same incident, and a worker's compensation claim from 2008-2009.  Defendants oppose the motion only to the extent that they want to ask Decker at trial whether he was

---

[3] Neither party says exactly when or where this incident took place, nor whether this "lawsuit" resulted in an arrest, much less a conviction, crucial as to admissibility.

3

convicted of a crime, and if so, the number of such convictions, as permitted under Wis. Stat. § 906.09.

Contrary to defendants' contention, the admissibility of Decker's criminal history in this civil case is governed by the Federal Rules of Evidence, *not* Wisconsin law. *Wallace v. McGlothan*, 606 F.3d 410, 419 (7th Cir. 2010) ("a federal court sitting in diversity is bound by state substantive law but applies its own procedural rules.") (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Generally, under Rule 609(a)(1), unless unduly prejudicial under Rule 403, evidence of previous convictions may be admitted for the limited purpose of impeaching a witness's character for truthfulness in a civil case, but only if: the offense was punishable by imprisonment for more than one year; and more than 10 years has not passed since the conviction or witness's release from confinement for it, whichever is older. As to the latter, evidence of a conviction may still be admissible but only if: (1) its probative value substantially outweighs its prejudicial effect; and (2) reasonable, written notice of the intent to use it has been provided to the opposing party. Fed. R. Evid. 609(b)(1)-(2). While plaintiffs say that more than 10 years have passed since his disorderly conduct charge or conviction, the parties have not offered any specifics as to the nature of Decker's crime or actual sentence and, without any specific facts and circumstances (preferably in the form of a certified judgment), the court is unable to weigh whether its probative value substantially outweighs its prejudicial effect. Accordingly, this motion is GRANTED as unopposed with respect to Decker's prior civil lawsuits and RESERVED with respect to Decker's criminal history. The parties should be armed with

actual evidence and prepared to address where the line should be drawn as to Decker's criminal history at the FPTC.

### 4. Preclude evidence of Decker's practices with respect to his own dogs.

Plaintiffs seek to preclude as irrelevant and "distracting" any evidence regarding Decker's own practices in handling and managing his dogs. In contrast, defendants argue that this evidence is *directly* probative of what constitutes ordinary and reasonable precautions in the context of dog ownership, and thus, relevant to the fourth factor in the court's public policy analysis related to placing too unreasonable a burden on a class of tortfeasors. *Pawlowski v. Am. Fam. Mut. Ins. Co.*, 2009 WI 105, ¶ 59, 322 Wis. 2d 21, 777 N.W.2d 67 (setting forth six traditional public policy factors); *see also Fandrey v. Am. Family Mut. Ins. Co.*, 2004 WI 62, ¶ 14, 272 Wis. 2d 46, 680 N.W.2d 345 ("Even though a jury has found negligence and that such negligence was a 'cause' (or substantial factor) in producing a plaintiff's damages, liability may be denied under factors that we have termed public policy considerations.") (citing *Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 176 Wis. 2d 740, 761, 501 N.W.2d 788 (1993)).

The court tentatively agrees with plaintiffs that evidence of Decker's leashing or other dog-handling practices with his own dogs is irrelevant and would likely be confusing to the jury, which will be instructed to consider only the issues of causation, contributory negligence, and damages. In addition, while such evidence may inform *the court* of customary *practices* among dog owners, it in itself is not likely to be probative of the *burden*, if any, associated with leashing a dog. Therefore, if and when the court addresses the question of whether liability should be imposed as a matter of public policy, it will

determine at that point whether any such evidence is relevant or necessary to its analysis. Still, the court will RESERVE on this motion until Wednesday's FPTC should defendants wish to revisit this tentative ruling based on a lack of relevance to the issues to be decided by the jury.

5. **Preclude evidence or arguments about dogs being protective of their home and owner.**

Similarly, plaintiffs seek to preclude evidence or argument related to dogs' "protective behaviors" because Wisconsin's strict liability statute, Wis. Stat. § 174.02(1), makes dog owners "liable for the full amount of damages caused by the dog injuring or causing injury to a person," regardless of why the dog attacked. As with plaintiffs' MIL #4, defendants argue that Decker's admission that dogs may act protectively toward their owners or property is relevant to the public policy analysis, "which operates as a limitation on liability grounded in proximate cause principles and a 'rough sense of justice' or fairness." (Dkt. #43 at 7.) For the same reasons as plaintiffs' MIL #4, therefore, the court will RESERVE on this motion until Wednesday's FPTC.

6. **Preclude evidence of or reference to Decker's prior, unrelated medical conditions and prescription medication use.**

Plaintiffs argue that Decker's pre-existing medical conditions and pre-existing prescription medications are not relevant to the injuries he sustained from the dog bite. However, defendants oppose a categorical exclusion of this evidence because: (1) the precise scope of damages plaintiffs intend to pursue remains unclear; and (2) plaintiffs appear to seek pain-and-suffering damages based upon alleged ongoing symptoms,

including a constant "tearing sensation" in Decker's arm at the site of the dog bite, which Decker's post-incident medical records do not confirm. Still, defendants do *not* contend that Decker's medical history *prior* to the dog bite is in any way probative of the pain, suffering, disability, and disfigurement that he sustained or continues to sustain from the dog bite. Accordingly, this motion is GRANTED. To the extent that Decker's past or current pain, suffering, disability, and disfigurement is not supported by his medical records at the time of or after the dog bite, defendants may use those records to refute Decker's account.

7. **Preclude evidence of the cost of Decker's medical care/medical bills related to the dog bite.**

   This motion is GRANTED as unopposed.

## B. Defendants' omnibus motion in limine (dkt. #43)

### 1. Limiting cumulative photographs of plaintiff's injuries.

Defendants argue that plaintiffs' proffer of photographic evidence (*see* Pltfs. Exh. ##11 and 12 (dkt. ##55-2 and 55-3)) should be subject to reasonable limitations to exclude cumulative or duplicative images that merely repeat the same evidentiary point, especially as to multiple photographs of Decker's forearm and rib area, as well as repetitive photographs of Decker taken in the hospital. While plaintiffs contend that the 50 or so photographs they seek to introduce into evidence are necessary to depict Decker's healing journey and the scope of his injury over his rehabilitation period, the court finds such a large number of photographs, many of which appear to depict the same injury at the same point in time, to be cumulative and unduly prejudicial to defendants given the limited

probative value of each individual photograph.  While the court does not seek to "sanitize" the evidence of Decker's injuries nor limit Decker's ability to show a long healing journey and permanent disfigurement, it will direct plaintiffs to make a good faith effort, by the FPTC, to limit the number of photographs to be admitted to 20 or less.  To this extent, the motion is GRANTED IN PART and the court will RESERVE IN PART as to any specific objections to this new, narrowed set of photographs at the FPTC.

2.  **Preclude any reference to Koda's prior aggressive conduct toward other animals or in a veterinary setting.**

Defendants argue that plaintiffs should be precluded from referencing, eliciting testimony regarding, or otherwise introducing evidence of Koda's alleged, prior aggressive conduct toward other animals or during visits to the veterinarian's office because any such evidence has little or no probative value as to Koda's propensity to bite a person at a campground.  Specifically, defendants cite Tomaino's deposition testimony that: (1) Koda was injured during a fight with his other dog, Dixie, during which *Dixie* showed aggression toward Koda (Tomaino dep. (dkt. #15, at 19-21)); and (2) Koda's veterinary records from Pleasant Valley Animal Hospital note only that: on February 22, 2021, "Patient is aggressive"; and on March 7, 2022, that "use muzzle since patient can growl and snap" (*id*. at 23-24).  In addition, William Bachman, who was with Tomaino at the campground, testified at his deposition that he had "heard" that Koda previously had chased a deer on Tomaino's farm.  (Dkt. #46, at 14.)

Plaintiffs oppose the motion on the grounds that Koda's previous behavior toward animals and vet staff *is* relevant for their claims brought both under Wis. Stat. § 174.02

(Owner's liability for damage caused by dog) and common law negligence. *See Nelson v. Hansen*, 10 Wis. 2d 107, 119, 102 N.W.2d 251 (1960) (Holding that § 174.02 "did not create a new cause of action or impose a new liability on owners of dogs by eliminating the basis of negligence, but merely dispensed with the necessity of proving scienter in cases when the injury is done by a dog because of a mischievous trait or propensity. That is all the section expressly provides and, being in derogation of the common law, the section should be strictly construed. The statute does not eliminate the defendant's liability in negligence and the plaintiff may rely on it if pleaded.")  Specifically, plaintiffs argue that under a common law negligence theory, Koda's previous conduct (e.g., the altercation with Dixie, chasing a deer, growling and snapping at vet staff, needing a muzzle and double leash and collar, being nervous, and being kept away from people) is relevant to whether Tomaino acted reasonably in putting Koda on a long leash in a pubic campground, as well as to whether the accident was foreseeable to Tomaino.  In addition, plaintiffs point to another Pleasant Valley Animal Hospital note from June 16, 2019, stating that "Home Owner's insurance company may call" (Pltfs. Exh. #2 (dkt. #55, at 6)), which they argue is relevant to the double damages provision in § 174.02(1)(b) that "the owner of a dog is liable for 2 times the full amount of damages caused by the dog biting a person with sufficient force to break the skin and cause permanent physical scarring or disfigurement if the owner was notified or knew that the dog had previously, without provocation, bitten a person with sufficient force to break the skin and cause permanent physical scarring or disfigurement."  They seek to question Tomaino at trial about this homeowner's insurance claim, which occurred before Koda bit Decker.

This motion is GRANTED IN PART AND DENIED IN PART.  The court agrees with defendants that Koda's interactions with other animals, as described above, has little probative value in this case, so those conduct reports will be excluded.  However, Koda's behaviors at the veterinary office or in the presence of other people, if known to Tomaino, are at a minimum relevant to comparative negligence, including whether Tomaino acted reasonably to restrain Koda in the campground and prevent the harm Koda caused, as well as to whether the bite was foreseeable.  As to the possible homeowner's claim referenced in the veterinary records, plaintiffs will be allowed to make a proffer as to this reference and, if necessary, briefly question Tomaino outside the jury's presence before the court rules on admissibility.  If necessary, the court will also address any other specific conduct reports that may be necessary to rule upon at the FPTC to be held closer to trial.

**3.  Preclude any reference to Tomaino's liability insurance.**

Citing Federal Rule of Evidence 411, which provides that evidence that a person is insured is not admissible to prove whether they acted negligently or wrongfully, as well as Rules 402 and 403, defendants seek to preclude any reference to the fact that Tomaino is insured.  There is no flat prohibition on reference to the insurance company at all under Wisconsin negligence law.  While plaintiffs say they will not put undue emphasis on "the deep pockets" of Tomaino's insurance company, they point out that Plymouth Rock is a *named party* in the lawsuit and reference to that fact is not improper.  However, they also agree with defendants' proposed jury instruction, Wis-JI Civil 125, which instructs the jury not to place *any* importance on the fact that insurance companies are involved in this case. Thus, this motion is GRANTED and *neither* party shall make any argument or reference

with respect to each other's insurance company or place any emphasis on the fact that the opposing party is insured.  In addition, the court will include Wis-JI Civil 125 as a closing jury instruction.  Finally, all evidence, captions and instructions shown to the jury should be devoid of references to insurance companies.

### 4. Exclude inadmissible hearsay.

Defendants move to exclude any inadmissible hearsay under Rule 802, including but not limited to the veterinary records of Koda.  As plaintiff notes, defendants have not identified the specific exhibits on which they seek a ruling, except for making a general reference to Koda's veterinary records.   Accordingly, this motion is DENIED as unnecessary.  The court will rule on the parties' hearsay objections as they arise at the FPTC and trial.

## ORDER

IT IS ORDERED that:

1) Plaintiff's motion in limine (dkt. #37) is GRANTED IN PART, DENIED IN PART, and RESERVED IN PART as set forth above.

2) Defendants' motion in limine (dkt. #43) is GRANTED IN PART, DENIED IN PART and RESERVED IN PART, as set forth above.

3) The clerk's office is directed to cancel the second final pretrial conference scheduled for June 9, 2026, and reset it for the week of August 10, 2026.

Entered this 1st day of June, 2026.

BY THE COURT:
/s/

_____
WILLIAM M. CONLEY
District Judge

11